## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH

| | | |
|---|---|---|
| JOHN J. VOIT, | ) | Civil Action No. 2: 21-cv-0772 |
| | ) | |
| Petitioner, | ) | Chief United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| v. | ) | |
| | ) | |
| DISTRICT ATTORNEY OF ALLEGHENY | ) | |
| COUNTY and PENNSYLVANIA BOARD | ) | |
| OF PROBATION AND PAROLE, | ) | |
| | ) | |
| Respondents. | ) | |

### MEMORANDUM OPINION[1]

Petitioner, John J. Voit, ("Voit" or "Petitioner"), has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging the June 13, 2019, judgment of sentence imposed on him by the Court of Common Pleas of Allegheny County, Pennsylvania, at its criminal case at CP-02-CR-0005607-2018. (ECF No. 6). For the reasons that follow, the Petition will be denied because none of the grounds for relief raised merits the grant of federal habeas relief. Furthermore, because jurists of reason would not find this disposition of the Petition debatable, a certificate of appealability will also be denied.

### Jurisdiction and Mootness

Voit was convicted on a misdemeanor charge of simple assault (M-2) and a summary charge of harassment. He was sentenced to a two-year term of probation. Voit filed the instant petition on June 11, 2022, two days prior to completing his term of probation. His term of probation has now expired and, as such, he is no longer considered "in custody" under 28 U.S.C.

---

[1]      In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of final judgment. (ECF Nos. 16 and 20).

§ 2254.[2] The Supreme Court of the United States has cautioned that habeas petitions filed in such instances are not necessarily moot, as there may be collateral consequences petitioners will face as a result of their convictions. *Maleng v. Cook*, 490 U.S. 488, 492 (1989); *Leyva v. Williams*, 504 F.3d 357, 363 (3d Cir. 2007) (quoting *DeFoy v. McCullough*, 393 F.3d 439, 442 n.3 (3d Cir. 2005)).

Felony convictions are universally presumed to carry with them a host of concrete disadvantages or disabilities that have been recognized as being sufficiently adverse collateral consequences to make a case justiciable. *United States v. Hill*, 171 F. Supp.2d 1032, 1038 (D.S.D. Oct. 4, 2001). But collateral consequences are not presumed with misdemeanor convictions. As a general matter, whether misdemeanor convictions impose collateral consequences significant enough to overcome a holding of mootness is made on a case-by-case determination.

Therefore, a threshold determination must be made as to whether this case is moot as a result of the expiration of Voit's sentence or do significant adverse collateral consequences flow from Voit's misdemeanor conviction for simple assault making this case justiciable. The Court ordered the parties to brief the issue. (ECF No. 21). Both parties responded and have identified adverse collateral consequences. Voit states that he was denied a housing opportunity and that he may be foreclosed from certain employment opportunities. (ECF No. 22). Respondents state that under Pennsylvania law collateral consequences may flow from Voit's misdemeanor conviction simple assault: the conviction may affect any future state criminal proceedings filed against Voit,

---

[2]     "In making a custody determination, [federal courts look] to the date that the habeas petition was filed." *Barry v. Bergen County Prob. Dept.*, 128 F.3d 152, 159 (3d Cir. 1997). When Voit filed his habeas petition, he was on probation, although he no longer is. The "in custody" requirement of 28 U.S.C. § 2254 is satisfied when a petitioner is on probation. *Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004) ("it is . . . clear that being on probation meets the "in custody" requirement for purposes of the habeas statute.").

including issues relevant to bail, the length of sentence, and the availability of probation; he may

be disqualified from jury service, 42 Pa. C.S.A. § 4502(1)(3), and disqualified from specific

professions, including, private detectives, 22 P.S. § 23(a); bail bondsmen, 42 Pa. C.S.A. §

5746(b)(3); employment agents, 34 Pa. Code § 9.13(a)(2); permit agents, 67 Pa. Code §

65.3(b),(c); and speech pathologists, 63 P.S. § 1710. (ECF No. 23).

Based on the record before it, the Court finds that significant adverse collateral

consequences flow from Voit's misdemeanor conviction for simple assault, even though such

collateral consequences are somewhat speculative.  As a result, the Court finds that the instant

habeas petition remains justiciable.

### Relevant and Procedural Background

This case arises from a domestic disturbance on August 7, 2018, between Voit and his

sister, Laurie Craig, and her husband, Glenn Craig.  The Superior Court in affirming the judgment

of sentence, recounted the factual background and evidence that led to Voit's arrest and conviction:

> [Voit] had been living with his sister, Laurie Craig, and her husband, Glenn,
> in their marital home since October 13, 2014.  In lieu of paying rent, [Voit] would
> contribute to the household by cleaning and performing various other tasks around
> the home.
>
> In the months leading up to the April 7, 2018 incident, the relationship
> between [Voit] and his sister became strained. [Voit] was experiencing money
> problems and had repeatedly asked to "borrow" money from Mrs. Craig and her
> husband.  However, when [Voit] asked if he could borrow more money on March
> 30, 2018, Mrs. Craig apologized, telling [Voit] that she and her husband could not
> give him any more money at that time.
>
> The next day, on March 31, 2018, [Voit] again asked his sister for money.
> Mrs. Craig told [Voit], "No I'm sorry.  We cannot give you any more money at this
> time.  You're welcome to live here, stay here, we'll provide you with food, [and a]
> home . . . We just can't give you any more money."  [Voit] stopped doing his chores,
> became "more moody," and stopped speaking to the Craigs.
>
> At approximately 2:00 p.m. on April 7, 2018, an argument began between
> [Voit] and his sister when Mrs. Craig questioned whether he was planning to

continue vacuuming, cleaning, and doing his normal chores around the house. [Voit] told Mrs. Craig that he would "still clean his room and his bathroom and vacuum the family room, but he wasn't doing anything extra." Mrs. Craig told [Voit] that she did not think that was fair, and [Voit] responded by telling her that he did not "give a shit anymore."

[Voit] proceeded to start the vacuum cleaner, but Mrs. Craig, wanting to finish their conversation, unplugged it. She informed [Voit] that their current living arrangement was no long viable and that she would help pay for an apartment for him to move into. In response, [Voit] told his sister to "go blow it out your fat ass," as he walked away from her. Mrs. Craig retorted with, "go blow it out of your fat ass and for once in my life you ass is fatter than mine." [Voit] then told her to "shut the H up."

At that very moment, Mrs. Craig's husband Glenn, came home and heard [Voit] swear at his wife. Mr. Craig told [Voit], "Don't talk to her like that." [Voit] responded, "That's it. I'm going to get you," and he came towards Mr. Craig with his fist raised over his head in a striking motion. Mr. Craig told [Voit] to "get out" of his house, which made [Voit] angry. [Voit] then raised his fist and came after Mr. Craig. Mrs. Craig recalled that she and her husband were "scared" and that they believed that [Voit] was going to hurt them. They had "felt it coming all week" with the way that [Voit] had been acting.

As [Voit] was making his way towards Mr. Craig, Mrs. Craig ran to call the police. [Voit] threw a punch at Mr. Craig, but he missed because Mr. Craig was able to move out of the way. Mrs. Craig heard "a thud against the hall wall," but she did not see what happened at that time. When she came around the corner and saw her husband running away from [Voit] down the hall, she saw that [Voit] was still pursuing him with his fist raised. At this point, [Voit] struck Mrs. Craig twice in the face – first punching her above her right eye and then upper-cutting her with his right hand to her left chin.

After Mrs. Craig suffered the two blows to her face, she crawled under the kitchen table with the phone still in her hand. Mr. Craig saw what happened to his wife and tried to lure [Voit] away from her. [Voit] followed Mr. Craig out onto the back deck, throwing a "big metal chair" at Mr. Craig as he jumped off the deck.

Mrs. Craig was also able to call 911 for help when [Voit] ran after her husband. Officers from the Northern Regional Police Department arrived shortly thereafter. Officer [Jennifer] Abbondanza "immediately notice[d] the swelling that was above Laurie's right eye" and "some swelling on her left chin." The officers took witness statements and photographed her injuries. [Voit] was not observed to have any injuries, and he denied hitting his sister.

Following the investigation conducted at the home, [Voit] was taken into custody. Mrs. Craig went to the hospital four (4) days after she was assaulted due

to the extent of swelling around her eye.  She had "big pockets of blood" on the side of her face, and the bruising under her eyes was visible until September of that year.  Through photographs, she documented her injuries and the progression of those injuries over time.  Those photographs were admitted as Commonwealth Exhibits One (1) through Four (4) at trial.

*Commonwealth v. Voit,* No. 1248 WDA 2019, slip op., filed Sept. 11, 2020 (unpublished) (quoting

Trial Court Opinion, 11/1/19, at 4-8) (ECF No. 15-1, at 195)).

Voit was charged with simple assault and harassment.  He was represented by Daniel J. Eichinger, Esquire, of the Office of the Public Defender, during the trial. Following a jury trial presided over by the Honorable Beth A. Lazzarra, the jury convicted Voit of one count of simple assault.  The court, sitting as a separate finder of fact, convicted Voit of one count of summary harassment.  Voit was sentenced to two years' probation at the Simple Assault count, ordered to attend anger management classes, and to undergo both Drug and Alcohol and Mental Health evaluations.  A No Contact Order was also imposed prohibiting Voit from having any contact with Laurie and Glenn Craig.  No further penalty was imposed at the Harassment count.  Trial Court's Opinion, 11/1/19. Voit's term of probation expired on June 13, 2021.

Voit, through counsel, filed a timely Notice of Appeal.  He raised two claims of error to the Pennsylvania Superior Court:

(1)  Did the trial court err in giving a jury instruction which improperly lowered the Commonwealth's necessary burden of proof on the concept of "reasonable doubt?"

(2)  Did the trial court err in denying the post-sentence motion because the guilty verdict was contrary to the weight of the evidence provided?

Appellant Br. 7 (ECF No. 15-1 at 106). After briefing, the Superior Court affirmed the judgment of sentence by Memorandum filed September 11, 2020.  *Commonwealth v. Voit,* No. 1248 WDA 2019, slip op., filed Sept. 11, 2020 (unpublished) (ECF No. 15-1, at 195).  Voit did not file a petition for allowance of appeal in the Pennsylvania Supreme Court.

Unsuccessful on direct appeal, Voit next sought relief under Pennsylvania's Post-Conviction Relief Act ("PCRA") by filing a timely *pro se* petition. (ECF No. 15-1 at 211). On January 20, 2021, the trial court, now presiding as the PCRA court, appointed Diana Stavroulakis, Esquire, to represent Voit through his PCRA proceedings. (*Id.* at 312). On February 18, 2021, Attorney Stavroulakis requested to withdraw as counsel (*id.* at 314), which request was granted. On or about February 25, 2021, the PCRA court appointed Corrie Woods, Esquire, to represent Voit. (*Id.* at 322). On April 13, 2021, Voit, through counsel, filed an Amended PCRA Petition which raised four ineffective assistance of counsel claims:

> 1. Trial counsel was ineffective in "failing to impeach Laurie and Glenn with certain prior inconsistent statements and prior statements and conduct suggesting a motive to fabricate their testimony;"
>
> 2. Trial counsel was ineffective in "failing to object to the Commonwealth's elicitation of an officer's speculative testimony (sic) a question of credibility;"
>
> 3. Trial counsel was ineffective in "failing to object and request a curative instruction and/or mistrial when this Honorable Court admonished Voit before the jury;" and
>
> 4. Trial counsel was ineffective in "failing to raise an alternative defense of self-defense."

Amended PCRA Petition at ¶2. (ECF No. 15-1 at 325). In the Amended Petition, it was noted by counsel that Voit was no longer serving any sentence for the summary harassment conviction and thus was ineligible for relief on that offense under the PCRA. *See* Amended Petition, n. 1 (*Id.*).

On May 6, 2021, the Commonwealth filed its Answer to the PCRA Petition. (*Id.* at 345). On May 25, 2021, the PCRA court issued a Notice of Intent to dismiss the PCRA petition in it addressed and rejected on the merits each of the four issues raised in the Amended Petition. (*Id.* at 415). On June 9, 2021, Attorney Woods advised the PCRA court that Voit desired to file a *pro*

*se* response to the Notice of Intent to Dismiss and, as a result, counsel requested permission to withdraw from the case. (*Id.* at 380). That same day, Voit filed his *pro se* response. (*Id.* at 385). On June 11, 2021, the PCRA court entered its Final Order dismissing the Amended Petition and granting counsel's motion to withdraw. (*Id.* at 388).

Voit filed the instant federal habeas petition on June 11, 2021. He includes all his claims under Ground One:

**GROUND ONE:** Violation Of Defendant's Fifth, Sixth, And Fourteenth Amendments Bill Of Rights - U.S. Constitution.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Judge Lazzara Badgers And Bully's Me About Accepting A Plea Deal. I Refuse, She Guarantees That I Will Be Found Guilty After Yelling At The A.D.A. And Public Defender Prior To Jury Selection.

Daniel Eichinger, Public Defender Suppresses And Does Not Introduce Authentic Factual Defendant Evidence And Testimony Including His Own Private Investigator, Fails To Impeach Or Challenge Plaintiff And Plaintiff's Spouse Testimony That Is Opposite Of The Plaintiff's Spouse, And Police Reports Written, Typed, And Interview Statements.

(b) If you did not exhaust your state remedies on Ground One, explain why:

Pet. at 5 (ECF No. 1, ¶ 12). He does not explain or expound on his claims other than the factual narrative quoted above. Essentially, Voit has raised three claims:

(1)     Judicial Bias resulting in a due process violation;

(2)     Ineffective assistance of counsel when trial counsel failed to introduce evidence and testimony; and

(3)     Ineffective assistance of counsel when trial counsel failed to impeach to Laurie and Glenn Craig.[3]

(ECF No. 1 at 5). Respondents were served with the Petition and in response notified the Court that on July 7, 2021, after the instant habeas petition had been filed, Voit had filed a *pro se* Notice

---

[3]     Voit does not refer to Laurie and Glenn Craig by name in his petition. Instead, he states, "Plaintiff and Plaintiff's spouse." The Court is proceeding on the assumption that Voit is referring to Laurie and Glenn Craig.

7

of Appeal in the Superior Court, raising four issues:

> 1.     Compromised, Badgering, Bully, Threats, Bias, Prejudice, Collusion, Suppression of Evidence by the Trial Judge Beth Lazzara.
>
> 2.     Dereliction of Representation, Incompetence, Ineffectiveness, Intimidated, Collusion, Failure to Impeach, and Suppression of Evidence by Public Defender Daniel Eichinger.
>
> 3.     False Testimony and Narrative by Northern Regional Police Officers.
>
> 4.     Uniformed, Unsuspecting Intimidated Trial Jury.

(Appellant Br., ECF No. 15-1, at 421).  Because the appeal was pending, this case was stayed pending Voit's exhaustion of his state court remedies.  (ECF No. 9).  On November 18, 2021, Voit notified this Court that the Superior Court had affirmed the dismissal of his PCRA petition and requested that the stay be lifted.  (ECF No. 12).  Respondents filed their Answer. (ECF No. 15). The Court then lifted the stay and reopened the case.  (ECF No. 18).

The Court has reviewed the filings of the parties, the electronic copies of the state court records (ECF No. 15-1), and the original state court record provided to the Court by Respondents, including three volumes of trial transcripts (Volumes I and II -T19-1384 and Volume III - T19-1385), the sentencing hearing (T19-1603), and the Post-Sentence Motion Hearing (T19-1639). The matter is fully briefed and ready for disposition.

### The Standard for Habeas Relief under 28 U.S.C. § 2254

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law."  *Harrington v. Richter*, 562 U.S. 86, 91 (2011).  Federal courts reviewing habeas corpus petitions "must be vigilant and independent . . . a commitment that entails substantial judicial resources."  *Id.*  This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "which imposes significant procedural and substantive limitations

on the scope" of the Court's review. *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017). Under 28 U.S.C. § 2254, federal courts in habeas cases must give considerable deference to determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010). Various standards must be met before the Court can review the merits of this habeas petition.

### 1. Timeliness

Before the Court can address the merits of Voit's petition, it must first decide whether it was timely filed. *Romansky v. Superintendent Green SCI*, 933 F.3d 293, 298 (3d Cir. 2019). Pursuant to AEDPA, a state prisoner must file his federal habeas claims within one year of the date his judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A). Respondents do not dispute that the instant petition was timely filed. (ECF No. 15 at 13).

### 2. Has the Petition Presented Cognizable Habeas Claims?

Habeas relief may be afforded to a state prisoner only when his or her custody violates federal law. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1, 6 (2010). The instant Petition raises three grounds for relief: a due process claim (Claim One) and two ineffective assistance of trial counsel claims (Claims Two and Three). Each presents a cognizable habeas claim.

### 3. Exhaustion and Procedural Default

Among AEDPA's procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b)(a)(A). An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits. *Carpenter v. Vaughn*, 296, F.3d 138, 146 (3d Cir. 2002) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *Johnson v. Williams*, 568 U.S.

298, 302 (2013).  Although mandatory, the exhaustion requirement "turns on an inquiry into what procedures are 'available' under state law." *O'Sullivan*, 526 U.S. at 847.  Under Pennsylvania law, a federal claim becomes exhausted once it is presented to the Pennsylvania Superior Court, either as a direct appeal from a state criminal conviction or as an appeal from a PCRA Court's denial of post-conviction relief.  *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (finding that review from the Pennsylvania Supreme Court is unavailable, and therefore not required, for purposes of exhausting state court remedies). [4]

If a claim has not been fairly presented "to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play." *Carpenter*, 296 F.3d at 146 (citations omitted).  The burden lies with a petitioner to demonstrate circumstances that would serve to excuse a procedural default.  *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 750.

### Discussion

Voit raised the claims here to the Superior Court on collateral review, but the claims were not addressed on the merits because the Superior Court found Voit ineligible for relief under the PCRA as he was not currently serving a sentence of imprisonment, probation, or parole. Respondents acknowledge that Voit's failure to exhaust should be excused based on futility as his period of probation ended on June 13, 2021, and so no appropriate state remedy exists under the

---

[4]   On May 9, 2000, the Pennsylvania Supreme Court issued Order No. 218 that declares that federal habeas petitioners no longer have to appeal to the state supreme court to satisfy the exhaustion requirement. *In re:  Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (per curiam). The Court of Appeals for the Third Circuit has recognized the validity of this Order.  *See Lambert v. Blackwell,* 387 F.3d 210, 233-34 (3d Cir. 2004), *cert. denied*, 544 U.S. 1063 (2005).

PCRA.   But Respondents argue that each claim is also procedurally defaulted and are barred from federal habeas review.

Procedural default is applied when the reason for the absence of state process is a petitioner's failure to comply with state procedural rules.  *Leyva v. Williams*, 504 F.3d 357 (3d Cir. 2007). As our Court of Appeals explained in *Leyva*,

> Noncompliance with Pennsylvania's custody requirement did not result from any failure on the part of Leyva, but simply from the expiration of his sentence.  This factor was outside Leyva's control and need not form the basis for a default.  *See Williams v. Taylor*, 529 U.S. 420, 432 (2000) ("To say a person has failed in a duty implies he did not take the necessary steps to fulfill it.  He is, as a consequence, at fault and bears responsibility for the failure.")  Indeed, we have previously declined to treat a petitioner's failure to comply with Pennsylvania's custody requirement as a basis for procedural.  *Coss v. Lackawanna County District Attorney*, 204 F.3d 453, 460 n.8 (3d Cir. 2000), *rev'd on other grounds*, 532 U.S. 394 (2001) ("We view [the custody rule stated in] Commonwealth v. Ahlborn not as erecting a 'procedural bar,' but as a statement that there is no available state remedy . . . .").

*Id.* at 369.   Here too, noncompliance with Pennsylvania's custody requirement did not result from any failure on the part of Voit, but simply from the expiration of his sentence.  Because this factor was outside Voit's control, the Court declines to treat Voit's failure to comply with Pennsylvania's custody requirement as a basis for procedural default.  Because the state courts never addressed Voit's current claims on the merits., this Court will do so in the first instance here.

1.     Due Process - Judicial Bias (Claim 1)

In his first claim for relief, Voit claims that he was subject to unconstitutional bias from the trial court judge.  Due process requires a "fair trial in a fair tribunal," *Bracy v. Gramley*, 520 U.S. 899, 904-905 (1997) (*citing, inter alia, Withrow v. Larkin*, 421 U.S. 35, 46 (1975)), before a judge with no actual bias against the defendant, or interest in the outcome of the particular case.

To succeed on a judicial bias or misconduct claim, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Winthrow*, 421 U.S. at 47.

Voit has failed to establish that the trial judge was biased against him or that, as a result of any of the judge's comments or rulings or administration of the case, he did not receive "a fair trial in a fair tribunal." *Bracy,* 520 U.S. at 904-05. The record belies Voit's arguments that the trial judge badgered and bullied him about accepting a plea deal. Rather, the record reflects that when Voit rejected the Commonwealth's offer of a full *nolle prosequi* in exchange for Voit agreeing to go for a mental health evaluation and take anger management classes, both the trial court and defense counsel explained to Voit, outside the presence of the jury, what a full *nolle prosequi* of the case meant. (T19-1384 at 4-9).

The record reflects that the trial court admonished Voit after he shook his head during Laurie Craig's testimony, "Sir. Once more and you're out. Understood?" (TT, p. 87). But Voit has not established that the court's warning for his behavior in the courtroom compromised his right to a fair trial, especially given the instruction given to the jury during the court's closing charge: " If during the trial I exhibited what you felt to be annoyance or displeasure towards any witnesses or lawyer, or if I made any comments or displayed any facial expression, you are not to assume that I'm attempting to lead you to render a particular verdict." (TT, pp. 65-66). It is well-settled that a jury is presumed to follow the court's instructions.

After an independent review of the record, the Court finds that none of the trial judge's actions or statements made either before the start of the trial or during the trial, individually or combined, reveal any improper bias, or badgering or bullying. Because nothing in the record supports Voit's allegations of judicial bias by the trial judge, Claim 1 will be denied.

2.      Ineffective Assistance of Trial Counsel (Claims 2 and 3)

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1994), announced the test that a habeas petitioner must satisfy before a federal court could find that counsel failed to provide effective assistance under the Sixth Amendment. Under the two-prong *Strickland* test, a petitioner must show: (1) that his attorney's representation fell well below an objective standard of reasonableness; and (2) that there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. 466 U.S. at 688-96. To satisfy the first prong of the *Strickland* test, a petitioner must show that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To meet the second prong of the *Strickland* test, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* It is self-evident that counsel cannot be ineffective for failing to pursue meritless claims or objections. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

1.      Failure to Introduce Evidence and Testimony

In his second claim for relief, Voit claims that his trial attorney was ineffective for "suppressing" and not introducing "authentic factual Defendant evidence and testimony including his own private investigator." Pet., ¶ 12. Voit does not specify the "authentic, factual defendant evidence" his attorney failed to introduce at trial.

It appears that Voit may also be challenging his attorney's failure to present testimony from Martin Aronson, an Investigator for the Allegheny County Office of the Public Defender. The Court can only assume that Mr. Aronson's testimony would relate to his pretrial interviews with

Laurie and Glenn Craig.  Voit has not rebutted the presumption that his trial counsel's decision not to present this testimony was based on a reasonable strategic basis.  The substance of Mr. Aronson's testimony would have been inadmissible hearsay.  And it appears that no hearsay exception would have allowed Mr. Aronson to testify regarding statements made to him by Laurie and Glenn Craig.  Counsel cannot be found to be ineffective for attempting to present evidence that would have been considered inadmissible.  Voit has not established that his attorney's representation fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688-96.  Thus, Claim 2 has no merit and will be denied.

      2.   <u>Failure to Impeach Laurie and Glenn Craig</u>

In his final claim for relief, Voit claims that his trial attorney was ineffective for failing to impeach Laurie and Glenn Craig's testimony with contrary police reports, and interview and written statements.  The PCRA trial court dismissed the Amended PCRA Petition finding the issued to be without merit, but the Superior Court did not reach the merits, finding instead that the Voit was ineligible for relief.  After a de novo review, this Court adopts the analysis of the issue made by the PCRA trial court as its own:[5]

> The Defendant's first IAC claim – that trial counsel was ineffective in failing to impeach Laurie and Glenn Craig with prior statements and incidents that could have cast doubt over their credibility and underlying motive – the court agrees with the Commonwealth's position that these incidents lack arguable merit because they were irrelevant and/or inadmissible at trial. (See Amended PCRA Petition, pp. 6-7).

---

[5]    In doing so, the Court is not applying the deferential standards of AEDPA to the PCRA trial court's analysis and determining that the PCRA trial court's analysis was not contrary to or an unreasonable application of federal Supreme Court precedent.  *See e.g., Thomas v. Horn,* 570 F.3d 105 (3d Cir. 2009) (holding that if a state trial court addresses an issue on the merits but the state appellate court finds the issue to be waived under state law, the federal habeas courts may not look through the state appellate court's finding of waiver and conduct a contrary to or unreasonable analysis of the state trial court's disposition on the merits). Rather, in reviewing *de novo* this claim, the Court is merely adopting as its own the PCRA trial court's analysis of this issue.

First, with respect to the November 2017 "incident" where the Defendant allegedly observed Glenn Craig look at a minor in a disturbing way, even assuming its veracity, there is no indication that this "incident" was ever acknowledged or discussed between the parties at any point thereafter which would bolster any allegation that it became a point of contention between them. (See Pro Se PCRA, Exhibit 23).   Moreover, the alleged incident preceded the offense date by five (5) months, which substantially weakens any motive argument.  The suggestion that this "incident" provided an ulterior motive to fabricate testimony is entirely speculative, and it would not have had a tendency to "make a fact more or less probable," particularly in light of the physical injuries that were observed on the victim, which were consistent with the account of the incident they provided.  As noted by the Commonwealth, trial counsel zealously cross-examined the witnesses regarding any bias and motive to fabricate testimony, and the claim regarding this incident has no merit.  (Commonwealth's Answer, pp. 13-1).

Second, the statements that allegedly were made by the Craigs the day after the assault about making false reports to the Defendant's new residence also were irrelevant and not admissible at trial because they would not have made the fact of the Defendant's assault more or less probable. Moreover, trial counsel attempted to reference the incident at the time of trial, but this court sustained the Commonwealth objection to relevance.

Third, the court finds that the "prior inconsistent statement" made by Mr. Craig was not a material inconsistency in any way. At trial, he twice testified that Laurie Craig was next to him at the time the Defendant followed him into the kitchen area. (TT, pp. 102-03, 107).  In his pretrial interview statement to the PD investigator Martin Aronson, Glenn Craig stated that Ms. Craig was "standing either behind Glenn or next to him." (*See* Pro Se PCRA Petition, Exhibit 32). Accordingly, this would not have been admissible as a prior inconsistent statement because any dissimilarity in the statements was not substantial enough to cast doubt over Mr. Craig's testimony. *See* Commonwealth v. Luster, 71 A.3d 1029, 1043 (Pa. Super. 2013) ("This Court has clarified that '[m]ere dissimilarities or omissions in prior statements . . . do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness' testimony to be admissible as prior inconsistent statements.") (quoting McManamon v. Washko, 906 A.2d 1259, 1268 (Pa. Super. 2006).

PCRA Notice of Intention to Dismiss, 5/25/2021, at ¶¶ 5, 6 (ECF No. 15-1 at 415).  As noted by

the PCRA trial court, Voit's trial attorney did not fail to impeach or challenge Laurie or Glenn

Craig's testimony.  He zealously cross-examined Laurie and Glenn Craig on any bias and motive

to fabricate testimony.  As with Claim 2, Voit has not established that his attorney's representation

fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688-96.  As a result, Claim 3 has no merit and will be denied.

## Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  Applying that standard here, the Court determines that jurists of reason would not find it debatable whether each of Voit's claims lacks merit and should be denied.  For these reasons, a certificate of appealability will be denied.

## Conclusion

For all of the above reasons, the habeas petition for a writ of habeas corpus will be denied. A certificate of appealability will be denied as well.  An appropriate Order follows.

DATED:  March 3, 2022

BY THE COURT:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc:     JOHN J. VOIT
        1506 LaPlace Point Court
        Apt. 512
        Sewickley, PA 15143
        (via U.S. First Class Mail)

        Samantha Renee Bentley
        Allegheny County District Attorney
        (via ECF electronic notification)

16